IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FANNIE MAE,                          §
                                     §
      Plaintiff,                     §
                                     §
v.                                   §  Civil Action No. H-10-999
                                     §
AFS-TX REAL ESTATE LLC,              §
HV ENTERPRISES, LLC, KEN HART,       §
PETER R. SILVA, TERESA A. SILVA      §
and CINDY LEPORE,                    §
                                     §
      Defendants.                    §

**MEMORANDUM OPINION**

Pending before the court[1] is Defendants' Motion to Set Aside Order Granting Summary Judgment (Doc. 22) and the response filed thereto.  For the reasons discussed below, the motion is **DENIED**.

**I.  Background**

On April 16, 2007, Defendants AFS-TX and HV Enterprises executed a promissory note ("Note") in the amount of $1,380,000 in connection with their purchase and operation of an apartment complex known as the Royal Place Apartments, located at 3800 Baker Road, Baytown, Texas, ("Property").[2]  The Note was secured by a Deed of Trust pledging the property as collateral as well as by personal guaranties ("Guaranties") of Defendants Ken Hart ("Hart"), Peter R. Silva ("Silva"), Teresa A. Silva and Cindy Lepore

---

[1]     On April 20, 2011, the parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Doc. 27.

[2]     <u>See</u> Doc. 1, Pl.'s Compl., p. 3.

(collectively "Guarantors").[3]

In mid-2009, Defendants defaulted on the Note and Guaranties, and the Property was sold at a foreclosure sale on December 1, 2009.[4] At the time of foreclosure, the balance owed to Fannie Mae was in excess of $1.4 million dollars.[5] Fannie Mae purchased the property at foreclosure for $300,000.[6]

Fannie Mae filed this action on March 26, 2010, seeking payment of the deficiency on the Note from all defendants as well as attorney's fees and recoverable expenses.[7] The July 16, 2010 Scheduling Order set the dispositive motion deadline for November 12, 2010, and the discovery deadline for February 25, 2011.

On November 12, 2010, Fannie Mae filed its motion for summary judgment on the Note and Guaranties and established through its summary judgment evidence that Defendants AFS-TX and HV Enterprises defaulted on the Note by failing to make the monthly payments for the months of July, August, September and October 2009.[8] The summary judgment evidence established that Fannie Mae accelerated the Note in October 2009 and that proper notice and demand for

---

[3]    Id. at p. 4.

[4]    Id.

[5]    Id.

[6]    Id. at pp. 4-5.

[7]    Id. at p. 6.

[8]    See Doc. 12, Pl.'s Mot. for Summ. J., Ex. A, Aff. of Nancy Bennett, ¶ 9.

payment was sent to AFS-TX and HV Enterprises and the Guarantors on October 13, 2009, and November 6, 2009.[9] The Property was posted for foreclosure and Fannie Mae was the only bidder at the December 1, 2009 foreclosure sale, the Property was sold to Fannie May for $300,000.[10]

The $300,000 purchase price was based, in part, on two offers to purchase the property forwarded to Fannie Mae by the Defendants as well as an appraisal report prepared by CB Richard Ellis.[11] The appraisal report determined that the Property required significant deferred maintenance in the amount of approximately $1,140,000.[12] After deducting that amount from several appraisal approaches, the "as is" value of the property on November 20, 2009, was determined to be zero.[13]

After crediting the $300,000 foreclosure price to the outstanding indebtedness, the summary judgment evidence concluded that the deficiency as of the foreclosure on December 1, 2009, was $1,231,280.56.[14] The summary judgment evidence showed that as of November 12, 2010, the total due was $1,330,071.54 and would

---

[9]    Id.

[10]   Id. at ¶ 10; see also id at Ex. A-10, Aff. of Sale; id. at Ex. A-11, Substitute Tr.'s Deed & Bill of Sale.

[11]   Id. at Ex. A, Aff. of Nancy Bennett, ¶ 11; see also id. at Ex. A-12, Letter of Intent; id. at Ex. A-13, Earnest Money Commercial Contract.

[12]   Id. at ¶ 12; see also id. at Ex. A-14, Appraisal Report at p. 30.

[13]   Id.; see also Ex. A-14, Appraisal Report, pp. 43, 79.

[14]   Id. at Ex. A, Aff. of Nancy Bennett, ¶ 13.

continue to accrue default interest at a rate of $392.18 per diem.[15]

Defendants did not respond to Fannie Mae's motion for summary judgment and, on February 4, 2011, the court granted the motion based on the uncontested summary judgment evidence.

On February 9, 2011, Fannie Mae moved for its attorney's fees and costs.[16]  On February 16, 2011, Defendants filed a response opposing the imposition of attorney's fees on the grounds that the amount claimed was excessive.[17]  Fannie Mae filed a reply and the matter was set for an evidentiary hearing on March 25, 2011.  On March 24, 2011, Defendants filed the pending motion to set aside the summary judgment.

## II.  Legal Standard

The present motion for reconsideration[18] is construed as a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure ("Rule") 59(e).  Such a motion "calls into question the correctness of a judgment." Templet v. Hydrochem, Inc., 367 F.3d 473, 478-79 (5th Cir. 2004).  A Rule 59(e) motion is not a "proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment."  Id.

---

[15]  Id.

[16]  See Doc. 18, Evidence on Pl.'s Att'y's Fees & Costs.

[17]  See Doc. 19, Resp. to Pl.'s Evidence.

[18]  Although Defendants rely on Rule 55(c)(setting aside a default judgment) as providing the applicable rule, Defendants filed answers to the suit on June 7, 2010, and were never in a default posture.  See Doc. 7, Answer.  The court finds that Rule 59 provides the appropriate standard.

at 479.   Rather, the rule provides relief in order to "correct manifest errors of law or fact or to present newly discovered evidence."   Id. (citing Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989)).

In support of their motion to set aside, Defendants state that they were defrauded into purchasing the property for an inflated value, and their lawsuit against the sellers of the Property resulted in only a small settlement.[19]   They argue that they opted not to respond to the motion for summary judgment because they believed that the parties were actively working towards a settlement of the lawsuit.[20]   By the time the settlement negotiations had stalled, their response was past due.   The court does not consider this to be good cause to reconsider the grant of summary judgment as Defendants could have sought leave from the court to file their response out of time.

Alternatively, Defendants argue that they have meritorious defenses to the motion for summary judgment.  Defendants argue that Fannie Mae failed to mitigate its damages when it failed to adequately consider offers to purchase the property before the foreclosure.[21]  This argument appears to be based on Texas law.  See Great Amer. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1, 908

---

[19]   See Doc. 22, Defs.' Mot. to Set Aside, p. 2; id. at Ex. A, Aff. of Hart, p. 2.

[20]   Doc. 22, Defs.' Mot. to Set Aside, p. 2.

[21]   Id. at pp. 3-4.

5

S.W.2d 415, 426 (Tex. 1995)(stating that an injured party to a breach of contract has duty to mitigate his damages if it can be done with slight expense and reasonable effort).

Defendants also argue that these offers show that Fannie Mae failed to bid the fair market value of the property at foreclosure and therefore they have a meritorious defense of offset under the Texas Property Code.  Section 51.003 of the Texas Property Code ("Section 51.003") provides that when a property is sold for less than the unpaid balance of the indebtedness on the property, the party against whom a deficiency judgment is sought may request the court to determine the fair market value of the property on the date of foreclosure and offset that party's deficiency, as appropriate.  Section 51.003 (b) provides that the fair market value of the property may be determined by the trier of fact based on: "(1) expert opinion testimony; (2) comparable sales: (3) anticipated marketing time and holding costs; (4) costs of sale; and (5) the necessity and amount of any discount to be applied to the future sales price or the cashflow generated by the property to arrive at a current fair market value."

In support of these contentions, Defendants offer the testimony of Guarantor Hart.  Hart, a principal and officer of HV Enterprises, averred that Defendants had offers to purchase the

property for $750,000 and $1.1 million prior to foreclosure.[22]  Hart also states that Fannie Mae sold the property several months after foreclosure for $700,000.[23]

Fannie Mae challenges Hart's statement under the best evidence rule, arguing that, if there were such offers, Defendants should have attached those offers to Hart's affidavit.  The "best evidence rule" of Federal Rule of Evidence 1002 requires, generally, that the original writing be offered to prove its contents.[24]  The rule "'comes into play only when the terms of a writing are being established,' not when a witness's testimony is based on personal knowledge."  In re Mobilift Equip. of Fla., Inc., 415 F2d 841, 844 (5th Cir. 1969).  Thus, Hart may testify from personal knowledge that an offer or offers were made to purchase the Property without running afoul of the best evidence rule.  However, the court notes that the fact that offers were made, without more, is insufficient to raise a fact issue that either offer was a credible or that it

---

[22]     Doc. 22, Defs.' Mot. to Set Aside, Ex. A, Aff. of Hart, p. 2.  The relevant portion of Hart's statement is as follows:

> In the few weeks immediately before Fannie Mae actually foreclosed on the real estate securing the loan, we worked toward finding buyers for that property.  We had offers of more than the $300,000 Fannie Mae eventually paid at the foreclosure sale.  These included offers of $750,000 and $1.1 million.  Fannie Mae gave those offers little consideration.  Just a few months after the foreclosure sale, Fannie Mae sold the property to a third party buyer for $700,000.

[23]     Id.

[24]     Federal Rule Evidence 1002 states: "To prove the content of a writing . . ., the original writing . . . is required, except as otherwise provided in these rules or by Act of Congress."

7

represented the fair market value of the property.

Alternatively, Fannie Mae argues that if the offers were made orally to Hart, those portions of Hart's affidavit must be stricken on the grounds of hearsay.  Hart does not reveal how he came to be personally aware that two offers were made to purchase the Property for those particular amounts.  However, unless the offers were made by an agent of Fannie Mae,[25] which they apparently were not, the communications must have been made by a third-party declarant and would be hearsay if offered for the truth of the matter asserted.[26] Defendants clearly intend for the court to rely on the truth of the statement - that offers were made to purchase the property for $750,000 and $1.1 million - thus raising a fact issue on the fair market value of the property at the time of foreclosure.  However, the court is unable to conceive of an exception to the hearsay rule that would allow Hart to testify about the substance of any such offer to purchase, whether made orally or in writing.  Likewise, Hart fails to explain how he has personal knowledge of the post-foreclosure sales price of the Property that would not violate the hearsay rule.  The court concludes that Hart's statements about the terms of the offers to purchase and the post-foreclosure sale must be excluded.

---

[25]    If the statement was made by an agent of Fannie Mae, it would be admissible pursuant to Federal Rule Evidence 801(d)(2)(D).

[26]    See Fed. R. Evid. 801(c)("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.")

Even if the court were to allow Defendants to correct their evidentiary deficiencies, Fannie Mae submitted evidence that the so-called offers had evaporated by the time of the December 1, 2009 foreclosure.  Fannie Mae submitted evidence to show that the "offer" to purchase the Property for $750,000 arose out of Defendants' lawsuit against the seller of the Property, Don Zhang ("Zhang").  The evidence showed that on October 29, 2009, Defendants' counsel informed Fannie Mae's counsel that Zhang offered to settle his portion of that lawsuit by repurchasing the Property for $750,000[27].  This offer was contingent on Zhang's ability to raise that sum of money, and his attorney sought fifteen days to do so.[28]  On October 30, 2009, in response to that information, Fannie Mae's counsel agreed not to go forward with the scheduled November 3, 2009 foreclosure but would re-post the foreclosure for December 1, 2009, in order to give Defendants the opportunity to see if Zhang could raise the money to repurchase the Property within the stated fifteen days.[29]  Apparently Zhang was unable to obtain funds and a firm offer to purchase the Property never materialized prior to foreclosure.

With respect to the $1.1 million "offer," Fannie Mae submitted

---

[27]    See Doc. 26, Pl.'s Resp. to Defs.' Mot. to Set Aside, Ex. D, Letter from John Ely to Yasmin Islam Atasi Dated Oct. 29, 2009.

[28]    Id.

[29]    See Doc. 26, Pl.'s Resp. to Defs.' Mot. to Set Aside, Ex. E, Letter from Yasmin Islam Atasi to John Ely Dated Oct. 30, 2009.

the affidavit of Gary L. McGlaughlin ("McGlaughlin") of Red Mortgage Capital, Inc., the firm which serviced the loan on the Property.[30] McGlaughlin averred that, in July 2009, he was advised by Guarantor Silva that an individual named Guy E. Hunt had made a $1.1 million offer on the Property.[31] McGlaughlin stated that, to the best of his knowledge, the offer was never accepted by Silva and the offer was never presented to Fannie Mae.[32]

Clearly, Defendants were aware of these "offers" at the time that the motion for summary judgment was pending. An unexcused failure to present evidence available at the time the summary judgment was pending is a valid reason for denying a motion to reopen. See Templet, 367 F.3d at 479 (citing Russ v. Int'l Paper Co., 943 F.2d 589, 593 (5th Cir. 1991)). Nonetheless, the court recognizes that it has an obligation to both bring this litigation to an end and to render just decisions on the basis of all the facts.

In the present case, Fannie Mae filed a legally and factually supported motion for summary judgment which was granted after it had been pending for several months. Fannie Mae explained the basis for its $300,000 bid on the Property. Defendants have not

---

[30] See Doc. 26, Pl.'s Resp. to Defs.' Mot. to Set Aside, Ex. F, Aff. of Gary L. McGlaughlin.

[31] Id. For purposes of this motion, the court considers McGlaughlin's statement, not for the truth of the matter asserted, but merely that Silva made the communication to McGlaughlin.

[32] Id.

submitted any evidence to rebut that which was offered by Fannie Mae in support of its motion and Defendants' request to reopen the summary judgment record to raise defenses of failure to mitigate, and offset are not supported by competent evidence.   After consideration of all the evidence, Defendants have not shown that the court committed a manifest error of law or fact in entering summary judgment against them.   Accordingly, their motion to set aside must be **DENIED**.

The parties are urged to come to an agreement on the issue of attorney's fees.   However, if an agreement cannot be reached, the court will conduct an evidentiary hearing on Fannie Mae's attorney's fees on November 4, 2011, at 3:00 p.m. in Courtroom 700. At that time the court will hear testimony from Fannie Mae's counsel on the reasonableness of his fees and expenses as well as any rebuttal testimony offered by Defendants.

It is **ORDERED** that Fannie Mae bring to the hearing a proposed final judgment reflecting the correct deficiency amount.   The court will rule on the request for attorney's fees by separate order.

**SIGNED** this 21st day of October, 2011.

Nancy K. Johnson
United States Magistrate Judge